IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| THE VAN TRAN and<br>CHIN THI NGUYEN § § § § § | **PLAINTIFFS** | |
| v. § | Civil No. 1:21cv369-HSO-BWR | |
| § § § | | |
| KNAUF GIPS KG and<br>KNAUF NEW BUILDING<br>SYSTEM (TIANJIN) CO. LTD. § § § | **DEFENDANTS** | |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS KNAUF GIPS KG AND KNAUF NEW
BUILDING SYSTEM (TIANJIN) CO. LTD.'S MOTION [28] FOR SUMMARY
JUDGMENT**

BEFORE THE COURT is Defendants Knauf Gips KG and Knauf New Building System (Tianjin) Co. Ltd.'s Motion [28] for Summary Judgment, seeking dismissal of all claims brought against them by Plaintiffs The Van Tran and Chin Thi Nguyen, or in the alternative dismissal of Plaintiffs' punitive damages claim and all claims other than those brought under the Mississippi Products Liability Act. After due consideration of the Motion [28], the parties' submissions, and relevant legal authority, the Court finds that the Motion [28] should be granted in part and denied in part, and that all claims not brought under the Mississippi Products Liability Act, claims for real property damages (including claims for remediation), and claims for punitive damages should be dismissed with prejudice. Plaintiffs' personal claims for bodily injury or other personal damages will proceed.

1

## I.   BACKGROUND

A.   Factual background

Rebuilding efforts following Hurricanes Rita and Katrina led to a supply shortage of building materials, which resulted in the importation and subsequent installation of drywall manufactured in China into homes and buildings across the United States. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 14-2722, 2020 WL 2425783, at *1 (E.D. La. May 12, 2020) (hereinafter "*In re Chinese-Manufactured Drywall*"). One such home, which contained Chinese drywall manufactured and distributed by Defendants Knauf Gips KG and Knauf New Building System (Tianjin) Co. Ltd. (collectively "Knauf" or "Defendants"), was purchased by Plaintiffs The Van Tran and Chin Thi Nguyen (collectively "Plaintiffs") in Ocean Springs, Mississippi, on September 31, 2006. *See* Tran Depo. [28-3] at 2; Ex. [28-1] at 2; Resp. [33] at 12. Plaintiffs allegedly discovered that the home contained Chinese drywall in April 2018. Ex. [28-1] at 2. On February 9, 2021, Plaintiffs sold the property to Le Mans Enterprise, LLC, which is not a party to this action. 2021 Deed to Le Mans Enterprise [28-5] at 1.

In their Complaint [1] filed November 15, 2021, Plaintiffs make general allegations that Defendants' drywall "react[s], break[s] down, and release[s] sulfur compounds and other noxious gases" that were exposed to Plaintiffs' "home, structures, personal property, and bodies . . . ." Compl. [1] at 9. Plaintiffs assert that the Chinese drywall was "unreasonably dangerous in its normal use" and caused damage to "Plaintiffs' home and/or caused personal injury resulting in eye

irritation, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm." *Id.* at 10. Other alleged damages include remediation costs to repair the home, alternative living expenses, personal property damage, devaluation of the home, and loss of use of the home. *Id.*

B.  Procedural history

This case is one of fifteen similar cases currently pending in this District relating to the installation of Chinese drywall in homes across the Mississippi Gulf Coast.[1] These cases were originally part of a class action brought in the Northern District of Alabama, but were designated, along with other Chinese drywall cases from Florida, Louisiana, Alabama, Virginia, Texas, and North Carolina, for transfer to multidistrict litigation ("MDL") and consolidated for pretrial proceedings in the Eastern District of Louisiana. *See Bennett v. Gebrueder Knauf Verwaltungsgesellschaft KG*, 5:14-cv-02204-LCB (N.D. Ala. filed Nov. 13, 2014); *In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 680 F. Supp. 2d 780, 782 (E.D. La. 2010). Upon conclusion of proceedings in the MDL, these cases were remanded to the Northern District of Alabama. *See In re Chinese-Manufactured Drywall*

---

[1] *See Cain v. Knauf Gips KG*, 1:21-cv-355-HSO-BWR (S.D. Miss. filed Nov. 14, 2021); *Christovich v. Knauf Gips KG*, 1:21-cv-356-LG-BWR (S.D. Miss. filed Nov. 14, 2021); *Ferry v. Knauf Gips KG*, 1:21-cv-357-TBM-RPM (S.D. Miss. filed Nov. 14, 2021); *Fozard v. Knauf Gips KG*, 1:21-cv-358-HSO-BWR (S.D. Miss. filed Nov. 14, 2021); *Fussell v. Knauf Gips KG*, 1:21-cv-359-HSO-BWR (S.D. Miss. filed Nov. 14, 2021); *Gauthreaux v. Knauf Gips KG*, 1:21-cv-360-TBM-RPM (S.D. Miss. filed Nov. 14, 2021); *Green v. Knauf Gips KG*, 1:21-cv-361-TBM-RPM (S.D. Miss. filed Nov. 15, 2021); *Humphries v. Knauf Gips KG*, 1:21-cv-362-TBM-RPM (S.D. Miss. filed Nov. 15, 2021); *Lafontaine v. Knauf Gips KG*, 1:21-cv-363-HSO-BWR (S.D. Miss. filed Nov. 15, 2021); *Lee v. Knauf Gips KG*, 1:21-cv-364-LG-BWR (S.D. Miss. filed Nov. 15, 2021); *Martino v. Knauf Gips KG*, 1:21-cv-366-HSO-BWR (S.D. Miss. filed Nov. 15, 2021); *McCullar v. Knauf Gips KG*, 1:21-cv-367-HSO-BWR (S.D. Miss. filed Nov. 15, 2021); *Payton v. Knauf Gips KG*, 1:21-cv-368-TBM-RPM (S.D. Miss. filed Nov. 15, 2021); *Caranna v. Knauf Gips KG*, 1:21-cv-370-HSO-BWR (S.D. Miss. filed Nov. 15, 2021).

*Prods. Liab. Litig.,* No. MDL 2047, 2021 WL 50455 (U.S. Jud. Pan. Mult. Lit. Jan. 5, 2021). On September 23, 2021, all plaintiffs whose claims involved property outside the Northern District of Alabama were severed from the *Bennett* action, *see Bennett v. Gebrueder Knauf Verwaltungsgesellschaft KG*, 5:14-cv-02204-LCB (N.D. Ala. Sept. 23, 2021) (Order Severing Plaintiffs), and Plaintiffs with property in the Southern District of Mississippi filed Complaints here on November 14 and 15, 2021, *see, e.g.,* Compl. [1] (filed on November 15, 2021).

On September 29, 2023, Defendants filed the instant Motion [28] for Summary Judgment, arguing that Plaintiffs lack Article III standing to bring this suit because they are "subsequent purchasers of the at-issue property without an assignment of their asserted causes of action . . . ." Mem. [29] at 1. In the alternative, Defendants seek partial summary judgment as to any claim not brought under the Mississippi Products Liability Act, Miss. Code Ann. § 11-1-63 ("MPLA"), as the MPLA is Plaintiffs' exclusive remedy, and on the issue of punitive damages, on grounds that Plaintiffs have failed to submit clear and convincing evidence that Defendants committed fraud or acted with willful, wanton, or reckless indifference to safety. *Id.* at 1-2.

Plaintiffs have filed a Response [33] conceding the MPLA issue. *See* Resp. [33] at 5-6. But they argue they do have standing to maintain their MPLA claim because no subsequent purchaser doctrine exists in Mississippi, and their Complaint [1] asserts a continuing tort regarding a "latent defect" discovered after Plaintiffs purchased the home. *Id.* at 11-13. As to punitive damages, Plaintiffs offer

4

a 2007 settlement agreement containing a confidentiality agreement between Defendants and its Florida distributor, a South Florida Business Journal article, and a 2006 email between Knauf's corporate officers, as evidence that Defendants wantonly disregarded the safety of others. *Id.* at 7-8; *see also* Ex. [33-1]. Plaintiffs further assert that this evidence shows that Defendants fraudulently concealed the defects in the drywall and failed to satisfy the Consumer Product Safety Act, 15 U.S.C. § 2051, *et seq.* ("CPSA")[2], which purportedly imposed a legal duty upon Defendants to report a known defective product. Resp. [33] at 8-11; *see also* Ex. [33-2]; Ex. [33-3].

In their Reply [35], Defendants highlight that Plaintiffs failed to cite any caselaw or authority to rebut Defendants' standing argument. Reply [35] at 2; *see also* Resp. [33] at 11-13. With regard to punitive damages, they argue that the content of the 2006 email contradicts Plaintiffs' assertions, as it only shows that a problem existed in Florida, not in Mississippi, and Defendants were assured the problem was not related to the drywall. Reply [35] at 7. Defendants maintain that the South Florida Business Journal article is not proper summary judgment evidence, and that the settlement agreement alone is not clear and convincing evidence of conduct warranting punitive damages; even if it was, an agreement with a Florida distributor is unrelated to Mississippi. *Id.* at 7-8. Defendants also point to two other district court decisions–which interpreted punitive damages statutes

---

[2] Under 15 U.S.C. § 2064 of the CPSA, a manufacturer of a consumer product must report to the Consumer Product Safety Commission any defect "which could create a substantial product hazard" such that it "creates a substantial risk of injury to the public." 15 U.S.C.A. § 2064(a)(2), (b)(3).

5

similar to Mississippi's–that rejected the same arguments and evidence as those advanced by Plaintiffs here. *Id.* at 11-12 (citing *Chedester v. Gebrueder Knauf Verwaltungsgesellschaft KG*, No. 1:21:cv09947-KD-B, 2023 WL 5806212, at *10 (S.D. Ala. Sept. 7, 2023); *Baldwin v. Knauf Gips KG*, No. H-22-395, 2022 WL 16823060, at *4 (S.D. Tex. Nov. 8, 2022)).

II.  DISCUSSION

A.  Summary judgment standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the "the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001) (quotation omitted); *see also Aries Bldg. Sys., LLC v. Pike Cnty., Mississippi*, 5:16-CV-16-DCB-MTP, 2017 WL 4678225, at *2 (S.D. Miss. Oct. 17, 2017).

If a movant carries its initial burden, the nonmovant must then present evidence beyond the pleadings that demonstrates "specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021). To rebut a properly supported motion for summary judgment, the nonmovant must show, with "significant probative evidence," that there exists a genuine issue of

material fact for resolution at trial. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A court must "view the evidence in the light most favorable to the nonmovant and construe all reasonable inferences in [his] favor" and "may not evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes." *Guzman*, 18 F.4th at 160 (quotation omitted).

B. <u>Analysis</u>

1. <u>Applicable substantive law</u>

The Court has jurisdiction over this matter pursuant to diversity of citizenship under 28 U.S.C. § 1332. "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Truong v. Bank of America, N.A.*, 717 F.3d 377, 382 (5th Cir. 2013). Thus, in resolving the present Motion [28], the Court applies Mississippi substantive law.

2. <u>The MPLA is Plaintiffs' exclusive remedy</u>

The MPLA "applies 'in any action for damages caused by a product[.]'" *Elliott v. El Paso Corp.*, 181 So. 3d 263, 268 (Miss. 2015) (quoting Miss. Code Ann. § 11-1-63). "[T]he MPLA provides the exclusive remedy for products-liability claims" such

7

that all non-MPLA claims based on damages caused by a product fail as a matter of law. *Id.* at 268-69 (quotation omitted).

The Complaint [1] advances nine counts, all of which allege damages caused by Defendants' defective drywall. *See* Compl. [1] at 11-19. Specifically, Plaintiffs raise claims for negligence (Count I), negligence per se (Count II), strict liability (Count III), breach of warranty (Count IV), private nuisance (Count V), negligent discharge of a corrosive substance (Count VI), unjust enrichment (Count VII), violation of the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.* (Count VIII), and violation of the MPLA (Count IX). *See* Compl. [1] at 11-19. "Practically, where a common law claim is subsumed by the MPLA and is brought alongside products liability claims based on the same theory of recovery, the proper course is to dismiss the common law claim to the extent it is duplicative of the parallel products liability counts." *Young v. Bristol-Myers Squibb Co.*, No. 416CV00108DMBJMV, 2017 WL 706320, at *4 (N.D. Miss. Feb. 22, 2017). Plaintiffs concede this is such a case. *See* Resp. [33] at 5-6. Thus, Plaintiffs' non-MPLA claims are subsumed by, and will be dismissed as duplicative of, their MPLA claim in Count IX. *See Elliott*, 181 So. 3d at 268.

3. <u>Plaintiffs lack prudential standing to maintain their claims for real property damages</u>

Defendants argue that Plaintiffs lack Article III standing to maintain their suit based upon the subsequent purchaser doctrine. Mem. [29] at 6-11. The Fifth Circuit Court of Appeals has recently highlighted that the "term 'standing' is often misused in our legal system. . . . And this has unfortunately led to confusion for

8

attorneys and judges." *Abraugh v. Altimus*, 26 F.4th 298, 303-04 (5th Cir. 2022). "The Supreme Court has described standing as 'contain[ing] two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement; and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction.'" *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013) (alteration in original) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004) (abrogated on other grounds by *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014))).

Article III standing presents a threshold jurisdictional question, and "[t]here are three elements that a plaintiff must prove to establish Article III standing: injury in fact, traceability, and redressability." *Abraugh*, 26 F.4th at 302. "[P]rudential standing does not present a jurisdictional question, but a merits question: who, according to the governing substantive law, is entitled to enforce the right?" *Id.* at 304 (quotation omitted). One distinction between the two is that when a court dismisses a claim for lack of Article III standing, it does so without prejudice, *see, e.g.*, *Collier v. S. Fin. Sys., Inc.*, No. 1:20CV62-HSO-RPM, 2021 WL 6618719, at *2 (S.D. Miss. Mar. 29, 2021), whereas dismissal of a claim for lack of prudential standing is with prejudice, *see, e.g.*, *Neel v. Fannie Mae*, No. 1:12CV311-HSO-RHW, 2014 WL 896754, at *10-11 (S.D. Miss. Mar. 6, 2014).

As in *Abraugh*, Defendants here raise Article III standing, *see* Mem. [29] at 6-7, but in substance they are challenging Plaintiffs' prudential standing, *see Abraugh*, 26 F.4th at 303-04. They assert that Plaintiffs lack standing under a

9

subsequent purchaser doctrine. *See* Mem. [29] at 7-10. They do not argue that Plaintiffs have not alleged an injury in fact traceable to their conduct or that is not redressable by the Court. *See id.*; Reply [35] at 1-5. Instead, Defendants premise their arguments on state law, *see* Mem. [29], contending that because Plaintiffs purchased the property after the drywall had been installed they are not the party "who, according to the governing substantive law, is entitled to enforce the right[,]" *Abraugh*, 26 F.4th at 303-04 (holding that Article III standing "depends in no degree on whether standing exists under state law"). Specifically, Defendants argue that because Plaintiffs purchased their home after the drywall had been installed and did not obtain an assignment of the sellers' claims, the subsequent purchaser doctrine bars recovery. Mem. [29] at 6-10.

While "an assertion that a plaintiff was not properly assigned a claim raises an Article III standing question if the assignment is the only ground on which the plaintiff asserts standing[,]" *Crabtree v. Allstate Prop. and Cas. Ins. Co.*, No. 1:21-CV-399-TBM-BWR, 2022 WL 17813701, at *3 (S.D. Miss. Dec. 19, 2022) (citations omitted), Plaintiffs here allege other grounds to support their standing, *see* Resp. [33] at 11-13.

Plaintiffs have Article III standing to assert their claims; they allege an injury in fact–that they, their personal property, and their home were damaged–traceable to Defendants' production of allegedly defective drywall, and that would be redressable by the Court in the form of money damages. *See Abraugh*, 26 F.4th at 304. Thus, even if Plaintiffs were not the proper parties to maintain this action

10

under Mississippi law, this "does not mean that [they] lacked Article III standing." *Id.*

Instead, Defendants' argument implicates prudential standing, which turns upon whether the causes of action asserted in this case belong to Plaintiffs under Mississippi law. Defendants cite *Henderson v. Copper Ridge*, 273 So. 3d 750 (Miss. 2019), for the proposition that "a cause of action arising out of injury to property is personal to the owner and a subsequent purchaser may not pursue the cause of action absent a specific assignment." Mem. [29] at 8. But Defendants misconstrue *Henderson*, which did not create a subsequent purchaser doctrine of the sort they are advancing. *See Henderson*, 273 So. 3d at 754-55. Instead, it addressed a different issue and held that some claims for damages travel with the land while others are personal to a plaintiff. *See id.*

The plaintiffs in *Henderson* brought breach of contract and tort claims against a contractor and their lender, alleging damages based upon allegedly faulty and incomplete construction of their home. *Id.* at 751. The trial court granted defendants' motion for summary judgment on the theory that the plaintiffs' claims traveled with the land, such that a subsequent foreclosure had cut off the plaintiffs' right to pursue tort and breach of contract claims since they no longer owned the property. *Id.* at 754. The Mississippi Supreme Court reversed, holding that some of the plaintiffs' claims belonged to them personally and did not travel with the land, in spite of the deed of trust divesting the plaintiffs of title to the property upon the foreclosure. *Id.* at 754-55. The Mississippi Supreme Court held that while the deed

11

of trust "did not convey [plaintiffs'] contractual or common-law rights related to either the promissory note or its separate contract with [a defendant][,]" *id.* at 755, the fact plaintiffs "no longer own[ed] the home may impact the type of remedy or amount of damages available to them[,]" *id.* at 755 n.2. In essence, the Mississippi Supreme Court concluded that the plaintiffs' breach of contract and tort claims were personal to them and did not travel with the real property, such that the plaintiffs were not precluded from pursuing them despite the foreclosure. *See id.* at 754-55. Thus, *Henderson* does not stand for the proposition advanced by Defendants here, that because Plaintiffs lacked an assignment when they purchased the home, they are unable to maintain their MPLA claim.

Defendants argue that because Plaintiffs purchased the home after the drywall had been installed and obtained no assignment, they lack standing to assert any of their claims under the subsequent purchaser doctrine. Mem. [29] at 6-10. But such a doctrine has never been formally adopted in Mississippi. *See Full House Resorts, Inc. v. Boggs & Poole Contracting Grp., Inc.*, No. 1:14CV223-KS-MTP, 2015 WL 1427284, at *8 n.7 (S.D. Miss. Mar. 27, 2015) (holding that defendants' argument that plaintiffs lacked standing because they bought the home after construction was completed failed as a matter of law); *see also May v. Ralph L. Dickerson Const. Corp.*, 560 So. 2d 729, 730-31 (Miss. 1990) (reversing a trial court's decision to grant summary judgment on negligent construction and breach of implied warranty claims to defendant because plaintiffs were subsequent purchasers); *Keyes v. Guy Bailey Homes, Inc.*, 439 So. 2d 670, 671-73 (Miss. 1983)

(extending the liability of builders in tort actions to subsequent purchasers of property because doing so does not change a builder's "duty to construct the home in a workmanlike manner"); *Gray Properties LLC v. Utility Constructors Inc.*, 168 So. 3d 1164, 1165-68 (Miss. Ct. App. 2014) (holding that although plaintiff "did not hold title to the . . . real property at the time the alleged defects . . . manifested[,]" it had standing because it suffered "an adverse effect from the conduct of the defendant").

Plaintiffs sold their home in February 2021, *see* 2021 Deed to Le Mans Enterprise [28-5] at 1-2, and in their Complaint [1], which was filed on November 15, 2021, they request "injunctive relief in the form of repair and remediation of their home" and damages for the "costs and expenses necessary to fully remediate or abate their home[,]" Compl. [1] at 10-11. Under *Henderson*, claims for damages such as these travel with the real property and do not belong to Plaintiffs personally. *See Henderson*, 273 So. 3d at 754-55. Because Plaintiffs no longer own the home, these claims are subject to dismissal with prejudice. But Plaintiffs' MPLA claims for bodily injury and other personal damages are not so precluded. Under *Henderson*, such claims are personal to Plaintiffs, they did not travel with the land upon its sale, and Plaintiffs have standing to maintain them. *See id.* at 754-55.

Simply put, relevant Mississippi authority reflects that a plaintiff does not lack standing in tort merely because he or she purchased a property after the allegedly tortious action was committed.[3] Defendants are not entitled to summary

---

[3] The Court notes that Mississippi has created an exception to this rule for prior trespass claims, holding that such claims do not "pass as an incident of the deed[.]" *Flowers v. McCraw*, 792 So. 2d 339, 342 (Miss. Ct. App. 2001); *see also Russell Real Prop. Servs., LLC v. State*, 200 So. 3d 426, 430 (Miss. 2016) ("The Court of Appeals has stated that '[u]nder the doctrine of 'prior trespass,' the deed

13

judgment on Plaintiffs' claims simply because Plaintiffs purchased the home after the drywall was installed.[4] But Plaintiffs' claims for damages to the real property itself should be dismissed because they have sold the home, and the Court will grant partial summary judgment as to all claims for real property damage, including claims for remediation. Summary judgment will be denied as to Plaintiffs' claims for personal damages under the MPLA.

3.      <u>Plaintiffs have not made a showing sufficient to support punitive damages</u>

Under Mississippi's punitive damages statute,

> Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.

Miss. Code Ann. § 11-1-65(1)(a).

"Mississippi law does not favor punitive damages; they are considered an extraordinary remedy and are allowed with caution and within narrow limits." *Warren v. Derivaux*, 996 So. 2d 729, 738 (Miss. 2008) (quotations omitted). Whether punitive damages should be awarded depends upon the particular circumstances of a case. *Robertson v. Catalanotto*, 205 So. 3d 666, 676 (Miss. Ct. App. 2016). "A review of Mississippi case law show[s] that 'trial courts may grant summary judgment on punitive damages claims when the evidence is so lacking that no

---

to land does not implicitly convey any right of action for trespasses or property damage that occurred prior to the transaction.'" (alteration in original) (quoting *Flowers*, 792 So. 2d at 342)).

[4] Notably, Defendants have not presented any evidence that either Plaintiffs or the previous owners of the home were aware of the Chinese drywall at the time Plaintiffs purchased the home. *See generally* Mem. [29]; Reply [35]. To the contrary, Plaintiffs discovered the Chinese drywall almost twelve years after purchasing the home. Ex. [28-1] at 1.

14

reasonable jury could impose punitive damages.'" *Wallace v. Ford Motor Co.*, No. 3:11-CV-567-CWR-FKB, 2013 WL 2630241, at *2 (S.D. Miss. June 11, 2013) (alteration in original omitted) (quoting *Tatum v. Kelley*, No. 3:11–CV–117, 2012 WL 956409, at *2 (S.D. Miss. Mar. 20, 2012)).

Plaintiffs point to three items of evidence to support their claim for punitive damages–a 2006 email, a 2007 settlement agreement, and a South Florida Business Journal article–arguing that Defendants fraudulently concealed and failed to report a known defect in violation of the CPSA. *See* Resp. [33] at 7-11; Exs. [33-1], [33-2], [33-3].

Nothing in the 2006 email supports Plaintiffs' theory that Knauf Defendants disregarded a known risk or were attempting to hide a defect in the drywall. *See* Ex. [33-2]. The email is between Knauf employees and relates to a smell emanating in houses with Knauf drywall in Florida. *Id.* at 2. However, the sending party states that she was told "the problem is not Knauf drywall[,]" and the responding party asks for "[a]ny ideas on how [he] can resolve this[.]" *Id.* The Court fails to see, and Plaintiffs have not demonstrated, how this amounts to clear and convincing evidence that Defendants fraudulently concealed an alleged problem. At worst, it may show that a problem existed in Florida and not Mississippi, and that Defendants were told the problem was not their product, but still wanted to find a way to resolve the issue. This is insufficient to show by clear and convincing evidence that Defendants fraudulently concealed the defect.

15

Plaintiffs next assert that a 2007 settlement agreement between Defendants and one of their suppliers constituted a "secretive indemnification agreement" and is evidence that Defendants knew of the defect and had a duty to report it. Resp. [33] at 7-11. The 2007 settlement agreement was between Defendants and a Florida distributor, *see* Ex. [33-1] at 1, and Plaintiffs have not made any argument that they or other Mississippi Plaintiffs purchased drywall from this distributor, *see generally* Resp. [33]. Again, the agreement may show that a problem existed with drywall in Florida, but not necessarily in Mississippi.

Furthermore, the settlement agreement reflects that the alleged smell was brought to Defendants' attention, that they investigated it, and that they found that "there were no health risks from Knauf Tianjin's plasterboard and the smell was the common smell of Gypsum Chinese plasterboard[.]" Ex. [33-1] at 2. The confidentiality provision within this agreement cited by Plaintiffs appears to be a boilerplate confidentiality provision and is not clear and convincing evidence that Defendants knew of and attempted to conceal a defect. *See id.* at 2-10. As stated by the Southern District of Alabama, the 2007 settlement agreement "is not sufficient evidence that Defendants intentionally concealed anything." *Chedester*, 2023 WL 5806212, at *8. "Rather, [the 2007 settlement agreement] is evidence that 1) Defendants had a dispute, 2) Defendants settled the dispute, and 3) [the distributors] are not allowed to discuss the settlement." *Id.* Furthermore, as highlighted by the MDL Court, the 2007 settlement agreement is insufficient to show Defendants knew the product created "a substantial risk of injury to the

16

public" such that it had to report it to the Consumer Product Safety Commission. *See In re Chinese-Manufactured Drywall*, 2020 WL 2425783, at *5, *12 (holding that the 2007 settlement agreement and Defendants' purported failure to report a defect to the Consumer Product Safety Commission were insufficient to show fraudulent concealment and toll Mississippi's statute of limitations).

Finally, the Court will disregard Plaintiffs' third piece of evidence, the South Florida Business Journal article, *see* Ex. [33-3], because "[n]ewspaper articles . . . are not proper summary judgment evidence to prove the truth of the facts that they report because they are inadmissible hearsay[,]" *James v. Texas Collin Cnty.*, 535 F.3d 365, 374 (5th Cir. 2008) (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005)). The portion of the article highlighted by Plaintiffs states that:

> In 2007, the [Florida distributor] signed a confidential agreement with the China-based manufacturer, Knauf Plasterboard Tianjin, which is owned by German conglomerate Knauf. Knauf agreed to take all remaining Chinese drywall from [the Florida distributor] and exchange it with domestic supply, if [the Florida distributor] agreed to stay quiet about the problem.

Ex. [33-3] at 2; *see also* Resp. [33] at 10.

Plaintiffs offer this excerpt to show that Defendants attempted to conceal or hide a known defect in the drywall. As presented, this article is inadmissible hearsay, and based on an examination of the record, the Court does not see how the article could be presented in admissible form at trial. *See* Fed. R. Evid. 802; Fed. R. Civ. P. 56(c); *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 208 (5th Cir. 2018) ("[E]vidence relied upon [at the summary judgment stage] need not be presented in admissible form, but it must be capable of being presented in a form

17

that would be admissible in evidence." (quotation omitted)). No hearsay exception applies to this article that would allow it to be presented in admissible form at trial. *See* Fed. R. Evid. 803, 804, and 807. In short, the proffered statement in the article is not proper summary judgment evidence. Even if the Court were to find this to be competent evidence, it has already addressed why the 2007 settlement agreement does not constitute clear and convincing evidence that Defendants recklessly disregarded the safety of others or committed fraud.

In sum, whether considered individually or in the aggregate, the evidence relied upon by Plaintiffs is insufficient to support an award of punitive damages, and "no reasonable jury could impose punitive damages" based on this evidence. *Wallace*, 2013 WL 2630241, at *2 (quoting *Tatum*, 2012 WL 956409, at *2). Because Plaintiffs have not presented clear and convincing evidence sufficient to create a genuine dispute that Defendants "acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud[,]" Miss. Code Ann. § 11-1-65(1)(a), Plaintiffs' punitive damages claim should be dismissed, *see Wallace*, 2013 WL 2630241, at *2-3.

### III. CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result. Defendants Knauf Gips KG and Knauf New Building System (Tianjin) Co. Ltd.'s Motion [28] for Summary Judgment should be granted in part and denied in part.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendants Knauf Gips KG and Knauf New Building System (Tianjin) Co. Ltd.'s Motion [28] for Summary Judgment is **GRANTED IN PART and DENIED IN PART**. All of Plaintiffs The Van Tran and Chi Thi Nguyen's non-Mississippi Products Liability Act claims, their punitive damages claims, and any claims asserted on the basis of damage to real property (including claims for remediation) are **DISMISSED WITH PREJUDICE**. Plaintiffs' personal claims for bodily injury and other personal damages will proceed.

**SO ORDERED AND ADJUDGED**, this the 16th day of April, 2024.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE